for which they become entitled to the greater disability benefits payable under § 2324 as amended.

Employer, Chrysler Corporation, appeals Superior Court's construction of the amended statute and ruling that the amount of disability benefits payable to Sforza and Johnson is determined as of their most recent date of return to total disability status rather than being fixed as of the date of their pre-July 1, 1975 injuries from which such disability arose.

The employees cross-appeal from the Superior Court's refusal to rule on their further contention that the increased statutory benefits are also payable to all persons injured and totally disabled thereafter—i. e., persons who have never resumed employment and thereafter returned to total disability status.

The controlling facts in this appeal are the same as those which were before us in *E. I. du Pont de Nemours & Co. v. Green*, 411 A.2d 953 (1980) and the questions presented in both the appeal and the cross-appeal are identical to those raised in *Du Pont v. Green.*

[1, 2] For the reasons stated in *Du Pont v. Green*, we hold that the claimants-appellees are not entitled to the increased statutory benefits payable under 19 *Del.C.* § 2324 as amended effective July 1, 1975 by reason of their return to total disability status after said date. *A fortiori*, claims by persons who remain continuously disabled after July 1, 1975 from previous injuries are likewise barred, as we also held in *Du Pont v. Green.* Hence, the cross-appeal must also fail.

Therefore, we reverse the decision of the Superior Court and reinstate the decision of the Industrial Accident Board.

REVERSED as to appeal; AFFIRMED as to cross-appeal.

Evidence



Jimmy JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 79-287.

District of Columbia Court of Appeals.

Argued Nov. 14, 1979.

Decided March 14, 1980.

After defendant was convicted of crime and while his appeal was pending he moved for new trial, alleging ineffective assistance of counsel. Denial of relief was reversed in part and remanded, 385 A.2d 742 but, after hearing, the Superior Court, Tim Murphy, J., again denied relief, and an appeal was again taken. The District of Columbia Court of Appeals, Newman, C. J., held that: (1) trial counsel was grossly incompetent in trial preparation by failing to investigate favorable medical report, to seek to obtain copy of report and to secure and present testimony of doctor himself, who examined complainant after alleged offense and concluded that there was no evidence of trauma, and (2) such failure of trial counsel blotted out essence of substantial defense and deprived defendant of effective assistance of counsel though counsel attempted to present medical report's negative findings indirectly in his closing argument by arguing that Government's failure to produce results of medical examination allowed inference that evidence would have been favorable to defendant.

Reversed and remanded for new trial.

**1. Criminal Law ⇐641.13(1)**

Defendant's Sixth Amendment right to effective assistance of counsel is violated if there has been gross incompetence of counsel and if this has in effect blotted out essence of substantial defense. U.S.C.A. Const. Amend. 6.

**2. Criminal Law ⇐641.13(6)**

In prosecution for taking indecent liberties with and enticing minor child, trial counsel was grossly incompetent in trial preparation by failing to investigate favorable medical report, to seek to obtain copy of report and to secure and present testimony of doctor himself, who examined complainant after alleged offense and concluded that there was no evidence of trauma. D.C.C.E. § 22-3501(a, b); D.C.C.E. SCR, Criminal Rule 16(a)(1)(D). U.S.C.A.Const. Amend. 6.

**3. Criminal Law ⇐641.13(6)**

Pretrial preparation is susceptible to reasonably objective determinations, and failure to investigate is one such objective violation of attorney's duty to client, and proper investigation is particularly crucial where central issue is question of credibility between key government witness and defendant. U.S.C.A.Const. Amend. 6.

**4. Criminal Law ⇐641.13(1)**

To establish ineffective assistance of counsel, defendant was required to show such prejudice from gross incompetence that substantial defense was blotted out, and showing required defendant to meet heavy burden of proving prejudice. U.S.C. A.Const. Amend. 6.

**5. Criminal Law ⇐641.13(6)**

In prosecution for taking indecent liberties with and enticing minor child, failure of trial counsel to investigate favorable medical report and to seek to obtain copy of report and to secure and present testimony of doctor himself blotted out essence of substantial defense and deprived defendant of effective assistance of counsel though counsel attempted to present medical report's negative findings indirectly in his closing argument by arguing that Government's failure to produce results of medical examination allowed inference that evidence would have been favorable to defendant. D.C.C.E. § 22-3501(a, b); D.C.C.E. SCR, Criminal Rule 16(a)(1)(D); U.S.C.A. Const. Amend. 6.

**6. Criminal Law ⇐641.13(1)**

A "substantial defense" from standpoint of whether defendant had been deprived of effective assistance of counsel by

blotting out of substantial defense is not limited to affirmative defense or presentation of alibi defense but may be predicated upon disproving element of crime charged or upon simply discrediting testimony of prosecution witness. U.S.C.A.Const. Amend. 6.

**7. Criminal Law ⟹641.13(6)**

Loss of highly credible impeachment material which may have been sufficient to cast reasonable doubt on Government's evidence blots out substantial defense, for purpose of determining whether assistance of counsel was ineffective. U.S.C.A.Const. Amend. 6.

---

William E. Findler, Arlington, Va., appointed by the court (counsel on appeal only), for appellant.

Cary M. Feldman, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Michael W. Farrell, and Timothy J. Reardon, III, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and PRYOR, Associate Judges.

NEWMAN, Chief Judge:

Appellant was convicted of taking indecent liberties with and enticing a minor child.[1] In a post-trial motion appellant asked for a new trial, alleging he had received ineffective assistance from trial counsel. The trial court denied this motion without a hearing. After a remand from this court on an appeal from that denial,[2] the trial court held a hearing on appellant's allegations. Subsequently, the trial court again denied the motion for a new trial, holding that any incompetence of trial counsel did not " '[blot] out the essence of a substantial defense' " under *Angarano v. United States*, D.C.App., 312 A.2d 295, 298 n.5 (1973), *rehearing denied*, D.C.App., 329 A.2d 453 (1974) (en banc), because the evidence left undeveloped by trial counsel would have been useful solely for purposes of impeachment. We reject the trial court's overly restrictive interpretation of the *Angarano* standard and hold that gross incompetence of counsel which results in failure to present highly credible evidence bearing on the credibility of a key government witness may rise to the standard of prejudice enunciated in *Angarano*.

We reverse and remand for a new trial.

## I

Appellant was tried on September 22 and 23, 1976, less than four months after the alleged incident occurred. The government's case rested principally on the testimony of the complaining witness, an eleven-year-old girl. Her testimony was circumstantially corroborated by testimony from her brother and her mother. Appellant testified on his own behalf as the sole defense witness. He denied ever having committed any indecent acts with complainant and insisted instead that complainant fabricated her story out of spite. As the trial court noted in its order denying appellant's new trial motion, the relative credibility of the complainant and of the appellant was the crucial issue at trial.

The testimony was undisputed that on the day of the alleged incident complainant was assisting her brother on his paper route. Both children were sitting in the lobby of appellant's apartment building, inserting sections of the Sunday paper, when appellant returned to the building. Appellant sought to purchase a sports section, but lacked the proper change. After some discussion, complainant agreed to accompany appellant to his apartment to receive the change.

According to complainant, after she entered appellant's apartment he asked her to sit on his couch while he went into the bedroom and came back with a five-dollar bill. He gave the five-dollar bill to complainant as a "donation" and told her she might become a model someday. He then proceeded to help her raise her blouse so that he could look at her chest. Appellant next unbuckled her pants, put his hands inside her pants, and placed his finger inside her vagina. Appellant then removed complainant's left shoe, took her pants off one leg, and placed her on a sheet on the floor. The complainant testified that appellant again placed his finger into her vagina, "for not too long but for a little while, two minutes or so." She stated she was not hurt by this fondling. Complainant's mother testified that she had taught her daughter the names of the various parts of her body and that complainant was familiar with those terms.

Appellant testified that the complainant had, in fact, come to his apartment on the date and time in question, in order to be paid for the newspaper. He contended, however, that complainant, while in the apartment, never left the immediate vicinity of the doorway. When appellant could not find the proper change, he handed complainant a five-dollar bill and told her to return four dollars in change from her brother. When, after approximately five minutes, complainant had not returned with his change, appellant left his apartment and found complainant standing by the elevator. He threatened to call her parents and tell them she had failed to give him his change.

Approximately two hours later the complainant's mother, accompanied by complainant, accosted appellant at his apartment and warned him not to make advances on the children in the neighborhood. Testimony as to the statements made at that time was in conflict, but all parties testified that it developed into a heated exchange.

Later the same day complainant and her mother reported the appellant's alleged indecent acts to the police. Complainant was taken to D.C. General Hospital where she was examined by Dr. Paul Gaither, a resident in obstetrics and gynecology. The doctor made a thorough examination and concluded that there was no evidence of trauma in complainant's vagina or genital area.

Appellant's trial counsel was informed at a status hearing on September 10, 1976, approximately twelve days prior to trial, of the existence of Dr. Gaither's report and of his conclusion that no evidence of trauma was found. At no time prior to trial did trial counsel attempt to locate the doctor, or to talk to him, nor did he attempt to subpoena the doctor to testify on behalf of the defendant at trial. Trial counsel apparently assumed, instead, that the doctor would be called to testify by the government and that he would have an opportunity to cross-examine the doctor.[3]

At approximately 6:00 p. m. on the evening of the first day of trial, after the government rested its case without calling Dr. Gaither, trial counsel had a forthwith subpoena issued for the doctor. The subpoena was addressed to Dr. Gaither at D.C. General Hospital and was returned with the notation that Dr. Gaither no longer worked at the hospital and had left no forwarding address. The following day the court ordered the trial to continue as scheduled. Trial counsel requested and was allowed to argue in closing argument that the failure of the government to call Dr. Gaither gave rise to the negative inference that his testimony would have been favorable to the defense.

## II

Pursuant to the order of this court,[4] the trial court held two hearings on appellant's claim of ineffective assistance of counsel. At these hearings the court received testimony from trial counsel, from appellant, and from Dr. Gaither. Trial counsel testified that he had personally handled all of

1. D.C.Code 1973, §§ 22-3501(a), -3501(b).

2. *Johnson v. United States*, D.C.App., 385 A.2d 742 (1978). At that time we held that appellant raised sufficient factual allegations to require a hearing under D.C.Code 1973, § 23-110.

3. The assumption was tenuous, at best, because it is highly unlikely that the government will call a witness who will directly contradict the complainant.

4. *See* note 2 *supra*.

the investigatory and preparatory work on appellant's case. He further testified that he had not at any time requested the medical report be provided to him by the government, but that he was told the conclusions reached in the report at the status hearing held on September 10, 1976.[5] He testified that he never saw the medical report until it was given to him as part of the *Jencks* material at trial.

Dr. Gaither reviewed a copy of the complainant's written statement to the police and his own medical report and concluded that the results of his examination of complainant were incompatible with the complainant's allegations. In particular the doctor testified that if a finger had been inserted into complainant's vagina, some indication of trauma would have been evident. In addition, on cross-examination, the doctor testified that fondling of the exterior of a young girl's genitals in the manner described by complainant would have resulted in a scratch or some other observable trauma, although mere touching would not. Finally, the doctor testified that he was never contacted by trial counsel nor by any representatives of the defense, although at the time of the trial he was still living in Arlington, Virginia, and had a telephone listed in his name.

In denying appellant's motion for a new trial the trial court held that the failure of trial counsel to sufficiently investigate and develop the incompatibility of Dr. Gaither's medical report with complainant's allegations did not "blot out the essence of a substantial defense." The trial court noted that penetration is not an element of either of the offenses. The incompatibility of Dr. Gaither's testimony at the post-conviction hearing and complainant's trial testimony would thus be solely relevant to complainant's credibility, and not to any specific element of the offense.[6] The trial court noted that trial counsel did attempt to impeach both the credibility of the complainant and that of her mother by attacking their identification testimony. However, the defense never asserted misidentification and appellant conceded in his testimony that the complainant visited his apartment at the time of the alleged incident. Trial counsel also attempted to present the medical report's negative findings indirectly in his closing argument by arguing that the government's failure to produce the results of the medical examination allows an inference that the evidence would have been favorable to the defendant. The court concluded that counsel placed the issues of credibility and the medical evidence before the jury " 'in a reasonably effective manner,' " quoting *Glass v. United States*, D.C.App., 395 A.2d 796, 811 (1978), and therefore appellant had not met his burden under *Angarano* of showing sufficient prejudice.

III

[1] A defendant's Sixth Amendment right to the effective assistance of counsel is violated if "there has been gross incompetence of counsel and this has in effect blotted out the essence of a substantial defense." *Bruce v. United States*, 126 U.S. App.D.C. 336, 339–40, 379 F.2d 113, 116–17 (1967); *Angarano v. United States*, *supra* at 298 (adopting the *Bruce* standard). Under

5. Why trial counsel made no request for the medical report as exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or as a report of a physical examination material to the preparation of the defense under Super.Ct.Cr.R. 16(a)(1)(D), is not apparent from the record and, indeed, appears to be inexplicable.

6. The doctor's testimony may be relevant to more than credibility. The medical finding of a lack of trauma may constitute physical evidence demonstrating that at least some of the alleged conduct did not occur. *See Ralston Purina Co. v. Hobson*, 554 F.2d 725, 729 (5th Cir. 1977) ("Evidence manifestly at variance with the laws of nature and the physical facts is of no probative value and may not support a jury verdict."); *Zollman v. Symington Wayne Corp.*, 438 F.2d 28, 31–32 (7th Cir.), *cert. denied*, 404 U.S. 827, 92 S.Ct. 59, 30 L.Ed.2d 55 (1971) (witness' testimony which is contrary to the physical facts has no probative value, requiring judgment for defendant); *Southern Pacific Co. v. Matthews*, 335 F.2d 924, 927 (5th Cir. 1964), *cert. denied*, 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed.2d 562 (1965) (same).



*Angarano* a convicted defendant must show two things: "that counsel was grossly incompetent and that counsel's incompetence blotted out the essence of his defense." *Oesby v. United States*, D.C.App., 398 A.2d 1, 4 (1979). The trial court's memorandum opinion contains no finding regarding the competence of counsel, but implicitly suggests that counsel was grossly incompetent. The trial court rejected appellant's claim on the second *Angarano*, ground, finding the prejudice resulting from counsel's actions fell short of "blotting out" a substantial defense. The apparent basis for this finding is that the undeveloped medical evidence would have been useful only for purposes of impeachment and therefore its absence did not affect a substantial defense. We disagree. The failure to develop the available medical testimony "blotted out the essence of a substantial defense" as the evidence, at a minimum, would have had substantial bearing on the credibility of the key government witness.

Note

A

[2, 3] Trial counsel was grossly incompetent in his trial preparation by failing to investigate the favorable medical report, to seek to obtain a copy of the report, and to secure and present the testimony of Dr. Gaither himself. "Counsel has a duty to conduct an independent investigation of the facts and circumstances of a given case." *Oesby v. United States*, *supra*, at 8 n.14; *see Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948); *Hampton v. United States*, D.C.App., 340 A.2d 813, 817 (1975). Pretrial preparation is "susceptible to reasonably objective determinations," *Monroe v. United States*, D.C.App., 389 A.2d 811, 819 (1978), and the failure to investigate is one such objective violation of an attorney's duty to his client. *See Monroe v. United States*, *supra* at 821 (" 'Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed . . . .' ") (quoting *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir.), *cert. denied*, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968)).[7] Proper investigation is particularly crucial where the central issue is a question of credibility between the key government witness and the defendant. *See Farrell v. United States*, D.C.App., 391 A.2d 755, 761 & n.2 (1978).

From the facts developed at the post-trial hearing it is undisputed that trial counsel was informed at least ten days prior to trial that Dr. Gaither's medical report would be favorable to the defense, yet trial counsel made no attempt to secure either a copy of the medical report nor to interview Dr. Gaither as a potential defense witness. This failure became salient when the government rested without calling Dr. Gaither to testify and trial counsel realized the favorable medical testimony would be lost. At that late juncture, the perfunctory issuance of a forthwith subpoena directed only to the doctor's place of previous employment proved unsurprisingly fruitless. Trial counsel was left with the sole option of arguing the negative inference from the failure of the government to present medical testimony. The fact that counsel was forced to exploit a negative inference is indicative of his inadequate preparation.

Contrary to the government's assertions, trial counsel's failure to secure Dr. Gaither's testimony cannot be deemed a "tactical" decision which we would decline to judge in hindsight. *Compare Wright v. United States*, D.C.App., 387 A.2d 582 (1978) (tactical decision not to use known and available alibi defense fully explicated); *Williams v. United States*, D.C.App., 374 A.2d 885 (1977) (same). Once the witness' presence at trial is assured, may be tactically wise to hope the government will present the defense with the opportunity to bring out the

7. *See also McQueen v. Swenson*, 498 F.2d 207, 212–13, 216–17 (8th Cir. 1974) (a set policy against interviewing government witnesses is a violation of an attorney's duty to investigate); ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 4.1 (Approved Draft, 1971); Note, *Effective Assistance of Counsel for the Indigent Defendant*, 78 Harv.L.Rev. 1434, 1439 (1965) (failure of counsel to investigate an apparently substantial defense should establish a presumption of ineffective assistance of counsel).

favorable medical testimony on cross-examination rather than compelling the defense to call the doctor as a defense witness. The failure to so ensure the doctor's availability at trial, however, was not a tactical choice. The issuance of the forthwith subpoena demonstrates trial counsel's belief in what was indisputable—the doctor's testimony would be valuable even if presented as part of the defense case. At a minimum, trial counsel could have ascertained the doctor's whereabouts and availability, thus ensuring the efficacy of a forthwith subpoena if the government, as it quite foreseeably did here, fails to call the witness.

The failure to properly prepare the case left the potential medical testimony undeveloped and therefore unavailable at trial. In this regard this case is very similar to the cases of *Harris v. Towers*, 405 F.Supp. 497 (D.Del.1974), and *Coles v. Peyton, supra.*[8] In *Harris* the court found trial counsel failed to exercise a normal level of skill by failing to investigate and develop medical evidence in defense of a charge of rape. The key issue involved the credibility of the defendant and the prosecutrix on the question of consent. Development of the medical evidence would have shown that the presence of "nonmotile sperm" indicated the prosecutrix either had sexual intercourse with a sterile male or had intercourse hours before the alleged time of her encounter with defendant. The failure to develop the obvious significance of this evidence, *inter alia*, was held to have resulted in a denial of the defendant's Sixth Amendment right to counsel. In *Coles*, where the defendant was also charged with rape, the court held that the failure to investigate and discover a written, signed medical report which showed negative results in vaginal tests for sperm and seminal stains, *inter alia*, denied petitioner's right to the effective assistance of counsel.

B

[4, 5] The second half of the *Angarano* standard requires that the defendant show prejudice from the gross incompetence of trial counsel such that a "substantial defense" is "blotted out". The showing requires the appellant to meet a "heavy burden of proving prejudice." *Thornton v. United States*, D.C.App., 357 A.2d 429, 435, *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). The incompetent preparation clearly deprived appellant of the benefit of the favorable medical evidence. Nevertheless, this court has never been presented with the precise question before us, *i. e.*, whether a "substantial defense" is "blotted out" when highly credible evidence which would have impeached the credibility of a key government witness is lost through incompetence. For the reasons that follow, we hold that a failure to impeach a key government witness with highly credible evidence may blot out a substantial defense under *Angarano*, and that the appellant has presented such a case.

[6, 7] The crucial issue in the present case was one of credibility. To acquit the defendant, the jury would have to discredit the testimony of the government's key witness. Dr. Gaither's highly credible testimony would have contradicted a critical portion of the complainant's testimony, *i. e.*, that appellant penetrated her vagina with his finger. Under *Angarano*, "a substantial defense lost due to incompetence must be shown to be a defense as a matter of law and available from facts known or obvious to the trial attorney." *Woody v. United States*, D.C.App., 369 A.2d 592, 594 (1977). A "substantial defense", however, is not limited to an affirmative defense or the presentation of an alibi defense. A defense may be predicated upon disproving an element of the crime charged, *cf. Glass v. United States, supra* (a lack of knowledge is a substantial defense to a charge of carrying out an armed robbery); *Harris v. Towers, supra* (consent in a forcible rape charge), or simply discrediting the testimony of the prosecution witness, *see Coles v. Peyton, supra.* A substantial defense would be lost, for example, if defense counsel failed to use available prior perjury convictions to impeach the sole prosecution witness, or to use prior inconsistent statements which sharply undercut the witness' credibility. Such failures could "blot out" a substantial defense even where it would be entirely appropriate for the defense to put on no evidence at all of its own. The defense may rely on the presumption of his innocence and on the government's obligation to prove each and every element of an offense beyond a reasonable doubt. *Mullany v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Rink v. United States*, D.C.App., 388 A.2d 52, 55 (1978); *Bethea v. United States*, D.C.App., 365 A.2d 64, 93–94 (1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977); *see Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). The loss of highly credible impeachment material, which may have been sufficient to cast a reasonable doubt on the government's evidence, blots out a substantial defense. *See generally* Finer, *Ineffective Assistance of Counsel*, 58 Cornell L.Rev. 1077, 1088 (1973); *cf. Mullaney v. Wilbur, supra* (state has burden of proving every element of a crime beyond a reasonable doubt, although defense put on no evidence).

8. The *Harris* and *Coles* courts applied standards for ineffective assistance of counsel that differ from the *Angarano* standard. The court in *Coles* modified the Fourth Circuit's "farce and mockery" standard by enumerating specific pretrial investigatory and preparatory duties of counsel, the violation of which establishes a prima facie claim of ineffective assistance, *see Monroe v. United States, supra* at 821; the *Harris* court applied the standard established in *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970) ("customary skill and knowledge"). Nevertheless, the cases are instructive in their findings of incompetence for failure to discover or develop medical evidence in a sexual assault case.



The trial court concluded that the cross-examination of the government witnesses on the issue of identification and counsel's closing argument regarding the lack of medical evidence placed the dual issues of credibility and the medical evidence before the jury "in a reasonably effective manner," *Glass v. United States, supra* at 811, and thus diminished the prejudice to appellant from the loss of the favorable medical evidence. However, counsel's cross-examination on the issue of identification, in light of appellant's testimony conceding his contact with both complainant and her mother, would more likely tend to bolster their credibility than to impeach it. Similarly, the negative inference in closing argument cannot be assumed to have presented an effective substitute for the impeachment potential of the highly credible and conflicting testimony of the examining physician. Without the doctor's testimony, which would have elucidated the incompatibility of his medical finding of an absence of trauma with complainant's description of appellant's acts, it is highly unlikely the jury would comprehend any contradiction with complainant's testimony. Even if it were to accept trial counsel's argument that the failure of the government to put on medical evidence demonstrates a lack of such evidence, the jurors would have no independent basis on which to reason that appellant's alleged actions would have left any observable trauma on complainant. Only the doctor's testimony or other direct presentation of the medical evidence could elucidate the incompatibility between complainant's version of what appellant did to her and the absence of trauma in her genital area.

IV

Appellant has borne his heavy burden of showing gross incompetence by his trial counsel and the "blotting out" of a substantial defense as a result of that incompetence. The violation of appellant's Sixth Amendment right to effective counsel requires reversal of his convictions, *Oesby v. United States, supra*, and remand for a new trial.

*Reversed and remanded for new trial.*

TO : Joseph Miga
Assistant Director

DEPT : Children and Their Families

DATE: August 25, 1981

FROM : Kathlene Marzilli
Social Caseworker

DEPT : Children and Their Families

SUBJECT: McVeigh-Link
12 Earle Street
Central Falls, R.I.

FA: Richard McVeigh, b. 1-18-47
CH: Cynthia McVeigh, b. 9-15-65
Tina McVeigh, age 6
female, age 7
MO: Laura Barber
STEP MO: Laura Link McVeigh - died 5-13-81

Per your request of 8-24-81, I am submitting a brief account of my investigation into the McVeigh-Link family. My investigation is limited to the McVeigh family as the Link branch of the family is serviced by Dick Prescott.

Worker made contact with Richard McVeigh and daughter, Cynthia, on 8-3-81 after 3 unsuccessful visits. The home was clean, pleasantly furnished, and Cynthia's physical needs are being met in a more than adequate manner. Both father and daughter vehemently deny that there is any sexual activity between them. Father states that is a "dirty lie manufactured by Cynthia's mother." Cynthia states she loves her dad very much. He has plans for her future, including college, and she feels he treats her better than her mother did. As evidence of his intention to obtain custody of his daughter, Richard McVeigh obtained an ex-parte order of detention from Judge Gendron on 8-3-81. Cynthia refuses to return to mother whom she feels neglects and emotionally abuses her.

Worker found Cynthia to be an intelligent and sincere young lady. Cynthia is aware of her father's past record including time spent in prison in Nashville for car theft. Cynthia feels dad is "rehabilitated" and trying his best with her. She attends Bristol Agricultural High School in Dartmouth, Mass., where she says she is a B average student. She hopes to become a veterinarian and her father is encouraging this dream.

Mr. McVeigh states, he alone, is raising his two young daughters (ages 6 and 7) as well as Cynthia. Cynthia does not have responsibility for the care of these children. Father would not let worker see the younger children because "he did not want them exposed to a social worker". Cynthia and dad deny that dad would let her drink. Cynthia said dad is strict and imposes a 9:00 p.m. curfew on her.

Worker spoke with John Ennis - lawyer for McVeigh's, who stated hearing an ex-parte will be September 4. Mr. Ennis re-iterated fact Cynthia will not return to her mom. Mr. Ennis stated father wishes to move back to Bristol County, Mass. with Cynthia if he is given temporary custody.

On 8-7-81 Laura Barber (mother and complainant) called Muray Friedman, and stated she had never said her daughter was being sexually abused by father. Apparently father accused mother of saying this - actual statement was made by Kevin Link to Dick Prescott. Mother called Mr. Friedman because she was furious about being subpoenaed to Family Court.

Mr. Joseph Miga

Page 2

August 25, 1981

At the present time, the allegations given to this agency, by mother and Kevin Link, have been denied by Richard and Cynthia McVeigh. Cynthia, soon to be 16, insists on staying with her dad. Richard McVeigh, in turn, has initiated court action to obtain her custody.

It would appear, at the present time, that the services of this agency are not necessitated.

S-D—Form 45b
1-66

# State of Rhode Island and Providence Plantations

PROVIDENCE, SC. SUPERIOR COURT

Civil Action
Indictment
(other actions)
File No. P1/92-2190A

STATE OF RHODE ISLAND

vs.

RICHARD McVEIGH

*Subpoena Duces Tecum*

To Frank Fallon, D.O. (Never came to testify)

of 1592 Broad Street, Cranston, RI 02905

YOU ARE HEREBY COMMANDED, in the name of the STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, to appear in the Superior Court at 250 Benefit St, Prov. Courtroom #9 within the County of Providence, on the 30th day of October, 1992 at 9:30 o'clock A M., to testify in the above action and bring with you any and all records and reports concerning examination, diagnosis and treatment of Cynthia D. McVeigh, Date of Birth: September 15, 1965

HEREOF FAIL NOT, as you will answer your default under the penalty of the law in that behalf made and provided.

Dated at Providence the 29th day of October in the year 1992.

[signature]
NOTARY PUBLIC
CLERK

10/30/92 viol of bail to be withdrawn (per Mike O'Connor) bail hearing cont to 11/4/92 2:00

S-144

11/6/92 Bail hearing cont to 11/17/92 2:00 [illegible]

C.I. 749

# State of Rhode Island and Providence Plantations.

Providence, sc.

*Return of Service*

I served this subpoena on the within named Frank Follow DO,

by delivering a copy to him and tendering to him $ n/a as fees for one day's attendance and mileage.

10-29-92

Subscribed and sworn to before me this 30th day of October, 1992

NOTARY PUBLIC

NOTE: Affidavit required only if service made by a person other than a sheriff or his deputy.

Acknowledgment

Due and legal service of this subpoena is hereby acknowledged, and the receipt of legal fees for travel and one day's attendance.

17 21

STATE OF RHODE ISLAND FAMILY COURT

PROVIDENCE COUNTY

LAURA M. MC VEIGH :
vs. : F.C. No, 208E-P
RICHARD L. MC VEIGH :

**ORDER AMENDING FINAL JUDGMENT**

This matter came to be heard on the 4th day of September, 1981 before Mr. Justice Alprin on the Defendant's Motion for Custody. By Agreement of the parties and with the approval of this Honorable Court it is hereby Ordered:

1. The Final Decree of December 15, ~~1981~~ 1967 is modified and Defendant Richard McVeigh is awarded custody of Cynthia Dee Mc Veigh, age 15 years.

2. Plaintiff Laura Barber (formerly (MCVeigh) is awarded all reasonable rights of visitation. The Defendant shall not be present during said visitaion.

3. Both parties are mutually restrained and enjoined from annoying threatening harming or molesting each other or said minor child.

4. This Court makes a finding of fact that Richard McVeigh is a fit and proper person for custody of Cynthia Del McVeigh

5. This Court makes a finding of fact that John Barber the husband of the Plaintiff in no way abused the said minor child.

6. The Defendant shall keep the Plaintiff appraised of his address at all times.

7. Counseling for Cynthia Dee McVeigh is ordered.

PER ORDER ENTER:

Soldberg J. 10/5/81 George Salvin Deputy

JUSTICE CLERK

Presented By:

John B. Ennis
JOHN B. ENNIS

A TRUE COPY ATTEST

[signature] CLERK

RECEIVED OCT 5 1981 FAMILY COURT CHARLES E. JOYCE, Clerk

the ... have ... the court was going to ... on high school ... for impeach ... or testimony at ... ial

STATE OF RHODE ISLAND
PROVIDENCE COUNTY

FAMILY COURT

LAURA M. MC VEIGH :

VS : F.C. NO. 208E-P

RICHARD L. MC VEIGH :

PETITION FOR CHANGE OF CUSTODY WITH
SUPPORTING AFFIDAVIT FOR EX PARTE ORDER

Richard Mc Veigh being duly sworn, states the following:

1. Defendant is the father of Cynthia Mc Veigh. He is a fit and proper person for custody of her.

2. Plaintiff, Barber (formerly Mc Veigh) is the mother of the child.

3. On December 15, 1967 the Final Decree in this case was entered, a copy of which is attached.

4. In that Decree, custody of Cynthia was awarded to the plaintiff.

5. Cynthia Mc Veigh is now fifteen (15) years of age, and is living with her father in Rhode Island. The plaintiff lives in Massachusetts.

6. Cynthia wishes to live with her father, as he provides a better home. She had been struck violently, several times by her mother's present husband, which caused her to leave home.

7. In Massachusetts, the plaintiff mother has on several occasions threatened to put Cynthia in a foster home.

8. There has been a substantial change of circumstances since entry of Final Decree, wherein the best interests of the child warrant custody being awarded to the defendant.

9. The defendant is concerned that the plaintiff will remove the child from the jurisdiction. She has tried to do this on several occasions in the last two (2) months.

10. The child would be irreparably harmed if she were forcibly returned to the plaintiff.

A TRUE COPY ATTEST

CLERK

WHEREFORE, defendant moves that this Honorable Court:

1. Ex parte restrain and enjoin the plaintiff from taking Cynthia Mc Veigh from the defendant until further Order of this Court.

2. Ex parte award custody of Cynthia Mc Veigh to the defendant father, RICHARD MC VEIGH, until further Order of this Court.

Richard L. McVeigh

Subscribed and sworn to before me at Providence, Providence County, State of Rhode Island, on this 14th day of August, 1981.

John B. Ennis
Notary Public

Presented by John B. Ennis
JOHN B. ENNIS,
ATTORNEY FOR DEFENDANT;
160 Plainfield Street
Providence, R.I. 02909

[illegible] September 4, 1981
George [illegible]
Deputy Clerk

RECEIVED
AUG 14 1981
FAMILY COURT
CHARLES E. JOYCE, Clerk

A TRUE COPY ATTEST:
[illegible]
CLERK